**IN THE UNITED STATES BANKRUPTCY COURT FOR**

**THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br>**MANUEL MEDIAVIAVILLA, INC.,**<br><br>Debtor | **CASE NO. 13-2800 (MCF)**<br><br>**CHAPTER 11** |
| IN RE:<br><br>**MANUEL MEDIAVILLA &<br>MAYDIN G. MELENDEZ,**<br><br>Debtors | **CASE NO. 13-2800 (MCF)**<br><br>**CHAPTER 11**<br><br>**FILED & ENTERED ON 01/14/2014** |

## AMENDED OPINION AND ORDER

Before the Court are cross motions for summary judgment and oppositions thereto in relation to PRLP 2011 Holdings L.L.C.'s (hereinafter "PRLP") Motion for Entry of Order Prohibiting the Use of its Cash Collateral by the corporate debtor, Manuel Mediavilla Inc. (hereafter "MMI"), and individual debtors, Manuel Mediavilla and Maydín Meléndez (hereafter the "Mediavillas")(all three jointly referred to as "Debtors").

Two main issues have to be addressed in order to determine whether several collateral assignment of rents provide PRLP a right to cash collateral under § 363 of the Bankruptcy Code.[1] First, does a creditor need to perfect a pre-petition rent assignment, according to state law, in order to extend its security interest post-petition? Second, if such pre-petition perfection is necessary,

---

1. Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

1

how are rent assignments perfected according to Puerto Rico Law? As to the first issue, the Court determines that § 552 of the Bankruptcy Code does require a valid pre-petition interest in order to extend a security interest post-petition and such pre-petition interest is created in accordance to state law requirements. In regards to the second issue, an assignment of rents is perfected when it is considered to have a fixed date, according to the Puerto Rico Civil Code[2] ("Civil Code") as interpreted by the Puerto Rico Supreme Court. Since duly notarized assignment of rents are considered authentic documents with a fixed date, the various collateral assignment of rent agreements executed between the parties pre-petition were duly perfected. As a result, PRLP has a valid security interest over all the rental proceeds generated by Debtors' commercial properties.

For the reasons expressed below, the Court Grants PRLP's Motion for Summary Judgment, Denies Debtors' Motion for Summary Judgment and consequently grants PRLP's Motion Prohibiting the Use of its Cash Collateral.

## I - JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a) and the general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

## II - MOTION FOR SUMMARY JUDGMENT

By agreement of the parties, this matter is appropriate for summary judgment disposition as there are no material facts in dispute and one of the parties is entitled to judgment as a matter of law, pursuant to Fed. R. Civ. P. 56(c), as made applicable to these proceedings by virtue of Fed. R. Bankr. P. 7056. Celotex v. Catrett, 477 U.S. 317 (1986)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

---

2. 31 L.P.R.A. §§ 101 et seq.

### III - UNDISPUTED MATERIAL FACTS

1. PRLP is a corporation incorporated under the laws of the Commonwealth of Puerto Rico.

2. MMI is a corporation incorporated under the laws of the Commonwealth of Puerto Rico.

3. The Mediavillas are the personal and joint guarantors of MMI's obligations to PRLP.

4. Debtors are the owners of six commercial properties that are currently leased to nine different tenants.[3]

5. Prior to the filing of the bankruptcy petitions, Debtors entered into several commercial transactions with Banco Popular de Puerto Rico ("BPPR") between 2006 and 2011.

6. The commercial transactions between BPPR and Debtors underwent several amendments in order to enhance the collateral provided to BPPR and to extend the maturity period of the loans.

7. Debtors and BPPR executed several Collateral Assignment of Lease Agreements whereby all the rent proceeds of Debtors' properties would serve as collateral in favor of BPPR.

8. Every assignment of rent agreement executed by the parties was duly authenticated by a notary public through an affidavit.

9. BPPR filed financing statement #2011001744 in the Puerto Rico Department of State ("Department of State") in relation to the collateral assignment of MMI's commercial leases for the properties located at Font Martelo #148 and #150, Humacao, Puerto Rico.

10. No financing statement has been filed in relation to Debtors' remaining collateral assignment of lease agreements in favor of BPPR.

11. Assignment of rent clauses are not included in any recorded mortgages encumbering Debtors' properties.

---

3. The current lease agreements in favor of MMI are:  Eastern Consulting Group, Inc. at Font Martelo Ave. #148; Facilidades Médicas Asociadas del Este Corp. and Tabernáculo de Restauración Ciudad de Refugio at Font Martelo Ave. #150; CRIM and CTP Towers III LLC at Font Martelo Ave. #152; and Departamento de la Familia at Sector Asturianas.  The current Lease Agreements in favor of the Mediavillas are: Tabernáculo de Restauración Ciudad de Refugio and Pharmacare, Inc. at Font Martelo #124 and Facilidades Médicas Asociadas del Este Corp. at Font Martelo #126. All addresses for the tenants of MMI and the Mediavillas are in Humacao, Puerto Rico.

12. On September 29, 2011, BPPR transferred its claims to PRLP as part of purchase of credits agreement between the two entities.[4]

13. On September 19, 2012, BPPR commenced a civil action against Debtors for foreclosure of mortgages and collection of money in the Puerto Rico Court of First Instance, Humacao Section.

14. On March 8, 2013, the Local Court issued an order of attachment on Debtors' personal property, including all rents produced by Debtors' real properties.

15. On March 25, 2013, Debtors filed a Certiorari before the Puerto Rico Court of Appeals.

16. On April 11, 2013, before the Court of Appeals resolved the matter, Debtors filed for bankruptcy under Chapter 11 and the Local Court case was stayed.

17. The MMI and Mediavilla cases were administratively consolidated on May 23, 2013.

18. On June 28, 2013, PRLP filed a motion to prohibit the use of cash collateral and requesting the tender of the rent proceeds from the Debtors' properties.

19. On July 11, 2013, PRLP filed Proof of Claim Number 9 for $2,635,138.28.

20. On July 15, 2013, Debtors objected to the request for the prohibition of the use of cash collateral.

21. Debtors are making monthly payments of $7,200 to PRLP in relation to the two properties (Font Martelo #148 and #150) recorded in the Department of State.

## IV - PARTIES' CONTENTIONS

PRLP filed a motion objecting to Debtors' use of its alleged cash collateral without its consent and without providing adequate protection for the diminution of the value of its collateral. PRLP proffers that it has valid perfected pre-petition and post-petition liens over all of Debtors' rents by virtue of several duly notarized assignment of rent agreements. PRLP argues that its pre-petition liens on Debtors' rents had been duly perfected as required by state law pursuant to the applicable provisions of the Civil Code as interpreted by the Puerto Rico Supreme Court. As such, the pre-petition liens extend to post-petition rent proceeds as provided by § 552 of the Bankruptcy Code.

---

4. For the purposes of the motions for summary judgment, Debtors have consented to the fact that PRLP has succeeded BPPR in its rights over the loan agreements. See Docket No. 63.

Debtors assert that they are making proper cash collateral payments to PRLP on the two properties for which creditor holds a valid perfected lien on Debtors' rents. They also assert that for the leases with unperfected liens a cash collateral payments is unnecessary and Debtors are allowed to keep such proceeds to further their reorganization purposes. Debtors allege that since an assignment of rent is a personal right it cannot gain access into the Registry of Property. Therefore, by default, it can only be perfected when it is recorded in the Department of State which is the only other public registry available for commercial transactions that provides notice to third parties. Debtors explain that Article 9-104(j)[5] of the Commercial Transactions Act[6] (the "Commercial Transactions Act") is inapplicable to our Civil Law tradition and the more general provision found in Article 9-102[7] regarding assignment of credits should be applied. Furthermore, Debtors allege that the leading case law from the Supreme Court of Puerto Rico regarding assignment of rents and the applicability of the Civil Code pre-dates the enactment of the Commercial Transactions Act and is not applicable to the present circumstances. Finally, Debtors allege that the Civil Code does not provide for a private assignment to be perfected and enforceable against third parties by establishing a date certain since no public notice of the agreement is provided.

PRLP rejects the necessity of recordation of a financing statement in the Department of State since the text of Article 9-104(j) of the Puerto Rico Secured Commercial Transactions Act specifically excludes assignment of rents from the statute's application.[8] Alternatively, if this Court deems that PRLP did not have a perfected pre-petition lien on rents, PRLP purports that the Bankruptcy Code by virtue of § 552(b)(2) grants post-petition security without the need to comply with state law pre-petition perfection requirements. It concludes that Congress' intent when it added § 552(b)(2) to the Bankruptcy Code was to exempt holders of security agreements from having to comply with varying state law perfection requirements in order to obtain a valid post-petition interest on rents.

---

5. 19 L.P.R.A. § 2004(j).
6. Act No. 208 of August 17, 1995, amended by the Secured Commercial Transactions Act, Act. No. 241 of September 19, 1996, 19 L.P.R.A. §§ 2101 et seq.
7. 19 L.P.R.A. § 2002.
8. 19 L.P.R.A. § 2004(j).

It is undisputed that the parties entered into several assignment of rent agreements which would constitute PRLP's cash collateral if perfected in accordance to § 552(b). [9] Although rents typically constitute cash collateral under § 363(a), the rents must be subject to a security interest as provided in § 552.[10] To this effect, Debtors are tendering the corresponding cash collateral payments for the lease assignments that have been registered in the Department of State. Payments are not being tendered for the rents of the remaining lease assignments not registered in the Department of State. We must, therefore, determine whether Debtors' leases are subject to a security interest under § 552(b) that may warrant the prohibition of the use of cash collateral.

A hearing was held on July 17, 2013, to consider PRLP's request for the prohibition of use of cash collateral and Debtors' response. Subsequently, cross-motions for summary judgments and corresponding replies were filed and an oral argument was held on August 22, 2013. Having heard and analyzed the parties' motions and their arguments the Court took the matter under advisement.

## V - LEGAL ANALYSIS

A - Post-petition Perfection of Assigned Rents under § 552

Post-petition effects of security interests are governed by § 552 of the Bankruptcy Code.[11] As a general rule, property acquired by the debtor post-petition is not subject to any lien resulting from a pre-petition security agreement.[12] The purpose of this general rule is to make available the post-petition property to the debtor in possession in order to operate the business post-petition and as security to obtain post-petition credit.[13] However, there are certain exceptions to the general rule that allow for a perfected pre-petition security interest to extend to post-petition rents if provided for

---

9. Cash Collateral is defined under § 363(a) of the Bankruptcy Code as:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title. 11 U.S.C. § 363(a).

10. See William L. Norton, Jr. & William L. Norton III, 2 Norton Bankruptcy Law Practice, 3rd ed., § 44:6 (2013).

11. 11 U.S.C. § 522.

12. See Hon. Nancy C. Dreher, Hon. Joan N. Feeny and Michael J. Stepan, Esq., Bankruptcy Law Manual, Volume 1, § 6:52 1297 (2013); 11 U.S.C. § 552(a).

13. 5-552 Collier on Bankruptcy ¶ 552.01 Collier on Bankruptcy (16th Ed. 2013).

under the assignment agreement.

Section 552 provides for two exceptions to the aforementioned general rule. First, under § 552(b)(1), a pre-petition security interest in "proceeds, products, offspring or profits of property [of the debtor]"[14] can be extended post-petition if the agreement provides for it, subject to "applicable non-bankruptcy law."[15] The other exception can be found in § 552(b)(2), which allows the post-petition extension of the existing security interest in "amounts paid as rents" as permitted by the security agreement.[16] Under both subsections, extension of the security interest after the bankruptcy filing is subject to the provisions of the security agreement. Nonetheless, there are two main differences between these subsections imperative to our case: (1) § 552(b)(2) applies to security interests related to rents, and (2) post-petition extension of security interests under § 552(b)(2) are not subject to "applicable nonbankruptcy law" like § 552(b)(1). Congress eliminated the "applicable non-bankruptcy law" requirement for security interest in rents in hopes of dealing with the confusion that resulted from the applicability of the previous version of § 552(b) because of varying state law perfection requirements.[17] However, the applicability of § 552(b)(1) and (b)(2) is not absolute since it is subject to the provisions of §§ 363, 506(c), 522, 544, 545, 547 and 548.

PRLP argues that Congress' intent when it purposefully eliminated the phrase "and by applicable nonbankruptcy law" from § 552(b)(2), was to exonerate creditors from the requirement of perfecting a pre-petition security interest in order to perfect a post-petition lien on rental proceeds emanating from a validly executed (pre-petition) security agreement. PRLP believes that it therefore does not need to have a perfected pre-petition lien according to state law in order for a post-petition lien on rent to be perfected.

Debtors refute PRLP's argument by stating that the plain text of § 552(b)(2) excepts its applicability to any unperfected lien on the rents that would be subject to avoidance by the debtor in

14. 11 U.S.C. § 552(b)(1).
15. Id.
16. 11 U.S.C. § 552(b)(2).
17. 5-552 Collier on Bankruptcy ¶ 552.03.

possession pursuant to its "strong arm" powers under § 544(a).[18] As such, they argue that if no pre-petition security interest is perfected over the assignment of rents according to state law it may be voided.[19] Consequently, Debtors proffer that § 552(b)(2) compels PRLP to comply first with the pre-petition perfection requirements in order to assert cash collateral rights over the post-petition rental proceeds. Debtors also assert that the removal of the "applicable nonbankruptcy law" language is in relation to additional state specific requirements needed to perfect a security interest on post-petition property acquired by the estate (in our case rent proceeds).

PRLP's argument implies that, upon a debtor's bankruptcy filing, any valid security agreement could perfect an unavoidable lien over post-petition rents without regard to state law perfection requirements. It also implies that the filing of a bankruptcy petition has the effect of perfecting previously unperfected security interests providing a more favorable treatment to a formerly unsecured claim.

PRLP relies on In re De Cespedes, 241 B.R. 260, 262 (Bankr. S.D. Fla. 1999), In re Barley 3A Investors, Ltd., 175 B.R. 755, 758 (Bankr. D. Kan. 1994), and Indian Motorcycle Assocs. III Ltd. P'ship v. Massachusetts Hous. Finance Auth., 66 F.3d 1246 (1st Cir. 1995), to support its allegation that the Court should not consider state law when deciding whether a pre-petition security interest extends to post-petition rent proceeds. Nonetheless, PRLP ignores the fact that in all the referenced cases the purported security interests were perfected as part of valid assignment of rents clauses included in the mortgage deeds that had been recorded in the corresponding property registries. These rulings are consistent with Congress' intent in that "Subsection (b)(2) is intended to provide a creditor with a valid post-petition interest in rents notwithstanding the creditor's failure to perfect its security interest in rents under applicable state law, as long as the underlying mortgage is properly recorded and contains an assignment of rents."[20] Even though Congress omitted the "applicable

---

18. See §§ 544(a) ("strong arm powers"), 1107(a). See generally In re Ryan, 851 F.2d 502, 512 (1st Cir. 1988) (trustee); In re Wabash Valley Ass'n, 1991 Bankr. LEXIS 2213 (Bankr. S.D. Ind. 1990).

19. See Indian Motorcycle Assocs. III Ltd. P'ship v. Massachusetts Hous. Fin. Auth., 66 F.3d 1246 (1st Cir. 1995)(prepetition perfection of a security interest in property of the estate normally is determined in reference to applicable state law); Midlantic Nat'l Bank v. Bridge (In re Bridge), 18 F.3d 195, 200 (3d Cir. 1994)(the Trustee's strong arm powers must be evaluated under appropriate state law). See also ASARCO LLC v. Americans Mining Corp., 396 B.R. 278, 316 (S.D. Tex. 2008) (The trustee cannot use the strong arm powers if the threshold requirement that the debtor have an interest in property is not met).

20. 5-552 Collier on Bankruptcy ¶ 552.03. See 140 Cong. Rec. H10,768 (daily ed. Oct. 4, 1994), reprinted in App.

nonbankruptcy law" language from § 552(b)(2), it decidedly kept the § 544 avoidance exception that requires a perfected pre-petition security interest in accordance with state laws. Congress' intentions were aimed at eliminating any further state specific requirements needed to perfect a post-petition security interest, not eliminate pre-petition perfection, which is governed by state law. These cases also tend to support Debtors' position since they conclude that additional state law perfection requirements will not be necessary once an existing lien has been perfected and the security agreement provides for post-petition extension of the lien. In other words, if you have a valid pre-petition lien that contractually extends to post-petition rents any additional state specific perfection requirement would be considered unnecessary to perfect such security interest or lien.

An extension of a lien on pre-petition rents must mean that a previous lien exists, otherwise there is nothing to extend post-petition. PRLP's theory urges the Court to determine that an unsecured personal assignment of credits would automatically perfect a security interest by the mere filing of a bankruptcy petition. PRLP's argument is unmeritorious, as shown by a careful analysis of the cases it has cited to advance its position.

It is unlikely that Congress' intent to avoid confusion and promote uniformity, would suggest a measure that would create inconsistencies within the text of the Bankruptcy Code.[21] According to the text of § 552(b)(2) and extensive case law analyzed by the Court, a valid pre-petition security

---

Pt. 9(b). Questions of what was required for a secured party to "perfect" its security interest in rents and of how the court should characterize hotel room revenues--as real property rents or as personal property--bedeviled the courts. See ¶ 552.LH. See also In re Resort Inns, Inc., 2004 Bankr. LEXIS 1580, at 11 (Bankr. S.D. Ga. Aug. 30, 2004) (state law perfection rules do not determine extent of security interest); In re De Cespedes, 241 B.R. 260 (Bankr. S.D. Fla. 1999); In re Wrecclesham Grange, Inc., 221 B.R. 978 (Bankr. M.D. Fla. 1997); In re Fairview-Takoma Ltd. P'ship, 206 B.R. 792 (Bankr. D. Md. 1997); In re Lykes Bros. S.S. Co., 216 B.R. 856 (Bankr. M.D. Fla. 1996); County of Orange v. Merrill Lynch & Co. (In re County of Orange), 191 B.R. 1005, 1019 (Bankr. C.D. Cal. 1996) (citing Treatise and noting that subsection 552(b)(2) is intended to provide a creditor with a valid security interest in rents despite the operation of state law); In re Barkley 3A Investors, Ltd., 175 B.R. 755 (Bankr. D. Kan. 1994). But cf. In re Millette, 186 F.3d 638 (5th Cir. 1999) (state law perfection rules, not section 552(b) used to determine priority rights in rental income between mortgage holder and judgment lienor).

21. For example, without a clear Congressional mandate, the courts would probably struggle to find a balance between pre-petition perfection requirement of § 544(a) and the exemption of basically the same requirements under § 552(b)(2). Such would be the situation that this Court would have to face if PRLP's position were to prevail.

9

interest must be perfected according to state law requirements if a post-petition extension of such interest is to be perfected.

Having established the need for pre-petition perfection of the assigned leases, we must now examine how assignments of rents are perfected in Puerto Rico.

B- Applicable Law: Perfection of an Assignment of Rents

In Puerto Rico, there are several means in order to perfect a pre-petition security interest. Our analysis requires consideration of what type of interest needs to be perfected, what law or laws apply and what, if anything, the local courts have stated in order to fill voids in the applicable law. Puerto Rico's unique legal marriage between civil and common law traditions allows for several legal sources to govern commercial transactions, including assignment of rents. Nonetheless, application of these sources must follow a hierarchical order, usually from the most specific law to the most general law. A special law on a subject matter should prevail over any other statute of a general character.[22] Any deficiencies in special laws shall be supplied by the provisions of the Civil Code.[23] Furthermore, any gaps which may appear in the legislation must be supplied by applicable case law.[24] As such, we must look at specific laws addressing assignment of rents and fill any void with the Civil Code as interpreted by the Puerto Rico Supreme Court. We will start our discussion on the more specific laws and work our way to the more general statutes, when necessary, to determine the requirements to perfect a pre-petition security interest on rents.

1. Assignment of rents clause in a validly recorded mortgage

We start our analysis with Puerto Rico's Mortgage Law, a special law related to the recordation and perfection of real property liens. The Registry of Property in Puerto Rico provides public notice of all the rights recorded therein including liens and encumbrances that affect them.

---

22. Paris v. Canety, 73 P.R. 386 (1952).
23. See Article 12 of the Puerto Rico Civil Code, 31 L.P.R.A. § 12. See also Berrocales v. Superior Court, 102 D.P.R. 224 (1974)(The Civil Code is suppletory in matters which are governed by special laws).
24. United Hotels of P.R. v. Willig, 89 P.R. 185 (1963).

Not all rights have access to the Registry of Property. Generally recordation is limited to real property rights, not personal property rights, such as rent assignments. Debtors cite Simonds v. Registrar of Humacao, 22 D.P.R. 608 (1915), in support of its position that in our jurisdiction rents are personal property interest and therefore are not subject to recordation in the Registry of Property. We agree that generally, a personal right cannot gain access to the Registry of Property by itself; however, by way of exception, it can gain access as an accessory right to another right that is recordable. Article 198 of the Puerto Rico Mortgage Law states that "[u]nless there is a specific agreement or legal provision to the contrary, a mortgage whatever the nature and form of the obligation that it secures, shall not include…(3) Rentals which are due and unpaid at the time payment of the secured loan is required."[25] Consequently, as a general rule, rents are not part of the security interest included in a mortgage, unless the mortgage deed specifically provides for it to extend to rent proceeds. Therefore, as an exception to the general rule, in Puerto Rico, assignment of rents can be perfected as part of an assignment of rents clause included in a validly constituted mortgage. The bankruptcy case of In re National Promoters and Services, 499 B.R. 192 (Bankr. D.P.R. 2013), came to this same conclusion when faced with this situation.[26]

Although there are several mortgages over Debtors' properties in favor of PRLP, the parties agree that no specific provisions within them include rents as part of the collateral that would secure the loans. As such, the general rule that excludes rents from attaching to the mortgage must be applied. Since mortgage law is not applicable to our case, we now direct our attention to applicable special commercial law as supplemented by more general laws.

2. Perfection through Puerto Rico Commercial Laws

The Model Uniform Commercial Code ("UCC") which has been adopted in the fifty states of the United States, does not apply generally in Puerto Rico.[27] However, Puerto Rico did enact a special commercial law as explained by In re Estevez-Ortiz, 297 B.R. 356, 358 (Bankr. D.P.R.

---

25. 30 L.P.R.A. § 2558.
26. However, the instant case differs from In re National Promoters and Services, 499 B.R. 192 (Bankr. D.P.R. 2013), in that the facts here do not reflect a rent clause in a validly constituted mortgage note.
27. Empresas Berrios v. Esteves-Ortiz (In re Esteves-Ortiz), 295 B.R. 158, 160 (B.A.P. 1st Cir. 2003)(citing Ennio M. Colón García et al., Puerto Rico: A Mixed Legal System - Mercantile Law, 32 Rev. Jur. U.I.P.R. 274 (1998) and

11

2002):

> the Commercial Transactions Act, which is Puerto Rico's version of the UCC, has adopted many of its Sections, sometimes literally.  The Commercial Transactions Act's purpose is similar to the UCC, namely, to expedite and facilitate the banking transactions in Puerto Rico and the United States by creating uniformity and consistency in the financing of chattel mortgages and other negotiable instruments.[28]

Nevertheless, the adoption of the Commercial Transactions Act has not negated the civil law tradition of this jurisdiction.  To this effect, the Bankruptcy Appellate Panel of the First Circuit explained:

> Retaining civil law influence has been due partly to the hierarchical order … which laws in Puerto Rico have. At the top level are the special mercantile laws. The next level that follows special mercantile laws is the Code of Commerce which is a general law. The Code of Commerce is applicable when there is no conflict of laws and when the controversy is not included in the special laws. In the absence of an applicable law, then the uses of commerce are observed.[29]

In order to analyze assignment of rent agreements, we must consider the Commercial Transactions Act as amended in 1996 and fill any gaps with the Civil Code as interpreted by the Puerto Rico Supreme Court.

### 3. Application of the Commercial Transactions Act to Assignment of Rents

Article 9-102(1)(a) of the Commercial Transactions Act states: "Except as otherwise provided in § 2004 of this title on excluded transactions, §§ 2001-2207 of this title apply… To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts."[30] Debtors believe that the broad language of Article 9-102(1)(a) includes collateral assignment of rent agreements; hence, there is no need to look beyond this law to determine whether

---

Acevedo v. Citibank, 15 P.R. Offic. Trans. 1012, 115 D.P.R. 768, 769 (1984)).

28. In re Estevez-Ortiz, 297 B.R. 356, 358 (Bankr. D.P.R. 2002), aff'd, 295 B.R. 158 (B.A.P. 1st Cir. 2003)(citing the Legislative History of Puerto Rico's Act No. 241 of September 19, 1996).

29. Estevez-Ortiz, 295 B.R. at 161.

30. 19 L.P.R.A. § 2002(1)(a).

a lien on rents is perfected. Debtors' theory is based on the fact that an assignment of rent is a personal right like any other assignment of credit and as a result does not have access to the Registry of Property by itself. Debtors argue that in order to provide notice to third parties and perfect its liens PRLP had to register its agreements in the Department of State by filing financing statements, like it did with the collateral rent assignments of two properties. However, Article 9-102(a)(1) cannot be considered an all inclusive provision since it is subject to several exceptions as expressly provided under Article 9-104.[31]

Article 9-104(j) states that the provisions of the Commercial Transactions Act do not apply "to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder."[32] PRLP proffers that the language of Article 9-104(j) is clear and since assignments of interests in rents are excluded from the Commercial Transactions Act, the Court must turn to the Civil Code as interpreted by the Puerto Rico Supreme Court to determine perfection requirements. We agree. The language of Article 9-104(j) unambiguously excludes the application of the Commercial Transactions Act to the assignment of rents and the Court cannot choose to ignore it in favor of another section. Since assignments of rents are not covered by the Commercial Transactions Act, we are required to examine the applicable provisions under the Civil Code as interpreted by the Supreme Court of Puerto Rico.

### 4. Assignments and the Puerto Rico Civil Code

In Puerto Rico, all rights acquired by virtue of an obligation are transferable unless prohibited by law or by a stipulation to the contrary.[33] One way to transfer rights stemming from obligations is through a valid assignment. There are four requisites for a transfer of a right or credit through assignment to be valid: (1) the credit must be transmittable, (2) be grounded on a valid title,

---

31. 19 L.P.R.A. § 2004.
32. 19 L.P.R.A. § 2004(j).
33. 31 L.P.R.A. § 3029 (Art.1065 of the Civil Code).

13

(3) the credit must be existent and (4) be originating from an efficient obligation.[34] Although a valid assignment is binding between the parties, an assignment of rents is not enforceable against third parties until it is perfected.  Article 1416 of the Civil Code describes the effect of assignment of credits against third persons.  Such article states:

> The assignment of a credit, right, or action shall produce no effect against a third person but from the time the date is considered fixed, in accordance with §§ 3273 and 3282 of this title. If said assignment involves real property, from the date of its entry in the registry.[35]

Thus, according to Article 1416, an assignment of a personal property right shall have effect against third parties once it has a fixed date.  The Civil Code provides for three ways to establish a fixed date on a private instrument (1) by filing it in a public registry, (2) by delivering it to a public official or (3) by the death of any party who signed the instrument.[36]  A public instrument, on the other hand, is considered to have a fixed date by its own nature.[37]

We must therefore, determine if the various collateral assignment of rent agreements are public or private documents in order to decide whether they comply with the statutory fixed date requirement.  For such purposes, we will rely on  the leading case regarding assignment of rents, Building Maintenance v. Hato Rey Executive, 9 P.R. Off. Trans. 379, 109 D.P.R. 656 (1980) where the Puerto Rico Supreme Court establishes how an assignment of rent may be perfected in accordance to the Civil Code provisions regarding assignment of credits.  In Building Maintenance, the Puerto Rico Supreme Court stated that it may be inferred that the important thing when considering whether an assignment of credit is enforceable against third parties is that it has a "date certain."  It explains that:

> The assignment of a credit through a public deed has a date certaine [sic][38] and may be raised against a third person because the public deed is a

---

34. IBEC v. Banco Comercial, 117 P.R. Off. Trans. 446, 117 D.P.R. 371, 377 (1986). See also Consejo de Titulares v. C.R.U.V.,132 D.P.R. 707 (1986); In re National Promoters and Services, 499 B.R. 192 (Bankr. D.P.R. 2013).
35. 19 L.P.R.A.§ 3941.
36. 31 L.P.R.A. § 3282.
37. Article 1172 of the Civil Code states "Public instruments evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter. They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein." 19 L.P.R.A § 3273.
38. We do not know if the English version is a typographical error or a derivative from the old French "certaine."

14

public document. Said deed is part of the protocol of the authenticating notary to which no third person has access. The reason why it may be raised against a third person is because it has date certaine. Likewise, the assignment made through a private document, once it is authenticated in an affidavit before a notary, has a date as certaine as that of a public deed, for besides the notarial authentication, it is recorded in the registry of affidavits or declaration of authenticity which a notary should keep by law.[39]

Building Maintenance concludes that an assignment of rent[40] that has been duly notarized through an affidavit is an authentic document with a date certain and therefore, is enforceable against third parties. It adds that authenticated documents are public instruments that are recorded in the registry of affidavits which by their own nature are public registries.

Debtors contend that Building Maintenance is outdated and does not accurately reflect the current legal reality that governs assignment of rents because Debtors claim that the case was decided before the Commercial Transactions Act was enacted.[41] Debtors further allege that the facts in Building Maintenance are different since the rents were not assigned to secure a credit, but to pay a debt. Finally, Debtors allege that Article 1416 of the Civil Code does not provide notice to third parties. It merely authenticates a date and therefore, cannot comply with perfection requirements under the civil law tradition.

Building Maintenance examined the applicability of the Assignment of Accounts Receivable Act,[42] the predecessor to the Commercial Transactions Act, to assignment of rents.[43] However, the Puerto Rico Supreme Court has yet to interpret assignment of rents under the mantle of the

---

39. Building Maintenance, 9 P.R. Off. Trans. at 889-891, 109 D.P.R. at 666-668 (citations omitted).

40. The Puerto Rico Supreme Court did not establish any difference between an assignment of credits and an assignment of rents. Essentially it applied the general concept of assignment of credits without pointing out any particular characteristics that should govern assignment of rents.

41. After the Court took this matter under advisement, PRLP filed an informative motion regarding the filing of In re National Promoters and Services, 499 B.R. 192 (Bankr. D.P.R. 2013). Debtor replied claiming that this Court is not bound by that decision and that the set of facts in this case is different.

42. Assignment of Accounts Receivable Act, 10 L.P.R.A. § 581 et seq.

43. The Puerto Rico Supreme Court determined that the Assignment of Accounts Receivable Act was inapplicable to that case for two reasons: 1) The Act is not applicable since rents were not assigned to secure a debt, but to pay a debt; and 2) The assignor is not involved in commercial industrial or professional activities. It is clear that the rents were assigned as security in our case, and it is likely that at least the corporate debtor would be deemed to engage in commercial, industrial or professional activities. Therefore, the reasons for the disqualification of the Assignment of Accounts Receivable Act as applicable to the Building Maintenance case may not be applicable to our case.

15

Commercial Transactions Act. So, any interpretation of our facts under the previous act would be inopportune and any prediction of possible outcomes under the new statute would be speculative. In Building Maintenance, the alleged "assignor" did not have any property to assign after it had previously assigned it as payment of a debt to a bank.  In other words, the assignor had no property to assign, since the rents were the bank's property.  Hence, the certainty of the date was crucial in order to determine whether the assignment to the bank was executed before the assignment to the other creditor.

In Building Maintenance, the relevance of notice to third parties takes a back seat to the discussion of the certainty of the date.  The Puerto Rico Supreme Court discussed the various ways of confirming the date of a private document and concluded that since the rents were assigned before a notary public they have a fixed date and are public documents that are enforceable against third parties.   As such, the authenticated agreements by way of affidavits are public documents, that comply with the perfection requirements of the Civil Code.

Regardless of the interpretation of the Commercial Transactions Act's precursor, a mere reading of the language of Article 9-104(j) suffices to conclude that the Commercial Transactions Act is not applicable to assignment of rents.  We are therefore obligated to follow the doctrine established in Building Maintenance in its interpretation of the Civil Code in relation to assignment of credits.[44]

### 5.  The Curious Case of Assignment of Rents in Puerto Rico

Having examined the parties' positions and the applicable laws we must now analyze the unusual legal circumstance surrounding the concept of assignment of rents in Puerto Rico.

The Civil Code does not explicitly address assignment of rents.  Applicable case law regarding assignment of credits is extremely limited in our jurisdiction. Building Maintenance specifically engages the issue of assignment of rents; whereas, other Puerto Rico Supreme Court

---

44.  As also followed by at least one other court in our district in National Promoters, 499 B.R. 192 (Bankr. D.P.R. 2013).

cases dealt with general assignment of credits.[45] Since assignment of rents are not mentioned in the Civil Code, the Puerto Rico Supreme Court applies general assignment of credit doctrines to determine perfection requirements.

On the other hand, the Commercial Transactions Act is very specific in its treatment of assignment of rents by excluding them from its applicability while including "any [other] transaction which is intended to create a security interest in personal property." So, while the Supreme Court states that assignment of credits and rents are the same, the language of the Commercial Transactions Act clearly states otherwise without providing a reason for this differentiation. In essence, the Commercial Transactions Act is applicable to all assignment of credits not excluded by Article 9-104. Practically speaking, the collateral assignment of rent agreements are technically barred from both public registries; the Department of State and the Registry of Property. Even though under the Civil Code a notarized assignment of rent is sufficient for notice, no explanation is provided as to why assignment of rents are destined to stay "publicly hidden" in a notary's registry of affidavits when all other credit assignments are given access to the registry. Consequently, while other assignments are publicly recorded in an appropriate registry, authenticated rent assignments are tucked away at some notary public's private office.[46]

Although the language of Article 1416 clearly states that an assignment shall produce no effect against third parties but from the time the date is considered fixed, "the purpose of article 1416 of the Civil Code… is not to make public the credit assignment so that it may be raised against third parties, but to give certainty to the date of the assignment to avoid frauds and simulations."[47] When describing the emergence and importance of credit assignments as security, the court in <u>Building Maintenance</u> states:

> The assignment of accounts receivable presented certain problems as to the security given to the creditor assignee, who is not receiving something tangible to raise against the individual debtor. This makes it different from the mortgage, the pledge, the promissory note, etc. All these problems

---

45. <u>Building Maintenance</u>, 9 P.R. Off. Trans. 379, 109 D.P.R. 656 (1980)(Rent Assignments); <u>IBEC v. Banco Comercial</u>, 117 P.R. Off. Trans. 446, 117 D.P.R. 371, 377 (1986)(Credit Assignments as Guaranty); <u>See also Consejo de Titulares v. C.R.U.V.</u>,132 D.P.R. 707 (1993)(Litigious Credit Assignments).
46. An affidavit is an authentic document publicly attested. <u>Ramos Mimoso v. Superior Court</u>, 93 P.R. 538, 540-541 (1966); <u>Bonilla v. Santiago</u>, 30 P.R. 229, 231 (1922).
47. <u>Building Maintenance</u>, 9 P.R. Off. Trans. 876.

> were solved through the adoption of these acts and in the particular case
> of Puerto Rico, with the creation of a register where the assignment is
> recorded for greater protection of the assignee before third persons.

9 P.R. Offic. Trans. at 877.

All assignment of credits, regardless of their type, are subject to the same "security problems" that would warrant "greater protection before third persons." It is therefore a mystery as to why assignment of rents are in a void whereby they are forbidden to be part of any public registry that would provide the standard "additional protection" that is afforded to other assignments of credit.  They do not have access to the Registry of Property (if not accessory to a validly recorded mortgage) nor to the personal property registry in the Department of State. We could not find any explanation under Puerto Rico Law or relevant case law as to why excluding assignment of rents would further the purpose of  creating uniformity, consistency and facilitating transactions as intended by the passing of the Commercial Transactions Act.  We were not able to find either how excluding such common and important transactions from a public registry advances the economic interests of any jurisdiction, considering the uncertainties that could arise from parties being unable to determine if a property is subject to any liens.

Debtors argue that Article 9-104(j) is a literal translation of its UCC counterpart approved by legislators without considering the unintended consequences of their actions.  As a result, a common law principle, whereby rents are considered part of real property, is being imposed in our jurisdiction where rents are considered personal property.  Debtors convincingly allege that in most states, if not all, rent assignments are considered real property interests that can be recorded in real property registries and for such reasons they are excluded from UCC application.  Even the cases cited by

18

PRLP suggest that Debtors assertions are correct.[48] This means that, in those states, assignment of rents have access to a public registry that provide notice to interested third parties.

So much confusion is caused by Article 9-104(j) that a common practice by local attorneys is to present assignment of rents in the Department of State, just as PRLP did with some of its assignment agreements, in an attempt to be overly cautious. The practical result of the application of Article 9-104 is that a party interested in finding out about rent assignment liens on properties would have to depend on the assignor to provide that information, since the information is practically inaccessible otherwise. A third party interested in engaging in commercial transactions would have the burden of trying to find which notary public, out of thousands of practitioners, if any, has authenticated a valid assignment of rent agreement in order to protect itself in such transactions. This is an insurmountable and costly burden that is hardly the type of stabilizing measure that could bring about certainty to commercial transactions.

Notwithstanding the aforementioned inconsistencies between Common Law and Civil Law traditions, it is not within this Court's duty or power to strike down a clear and valid law. The legislators in Puerto Rico chose which specific UCC articles they wanted to adopt and incorporate into the Commercial Transactions Act, which was amended a year later in order to include additional provisions from the UCC. We must assume there is a valid reason as to why Article 9-104(j) was part of the chosen sections to be included in the Commercial Transactions Act despite our civil law

---

48. As stated in Indian Motorcycle,

> The law in most states, including Massachusetts, classifies an assignment of rents as an interest in real property. Thus, parties with security interests in future rents generated from encumbered real property need not comply with the Uniform Commercial Code. See Mass. Gen. L. Ann. ch. 106, § 9-104(j) (excluding assignments of rent from Massachusetts U.C.C.); see also, e.g., Commerce Bank v. Mountain View Village, 5 F.3d 34, 39 (3d Cir. 1993); J.H. Streiker & Co. v. SeSide Co. (In re SeSide Co.), 152 Bankr. 878, 882 (E.D. Pa. 1993); First Nat'l Bank v. United States (In re Dorsey), 155 Bankr. 263, 267 (Bankr. D. Me. 1993); see generally Laurence D. Cherkis, Collier Real Estate Transactions and the Bankruptcy Code P 2.03[1], at 2-65 (1992). Instead, the mortgage and assignment of rents need only be recorded in the appropriate registry of deeds. See Mass. Gen. Laws Ann. ch. 183, § 4 (providing that unrecorded assignment of rents is invalid against third parties, except for persons with actual knowledge); see also In re Cadwell's Corners Partnership, 174 Bankr. 744, 754 (Bankr. N.D. Ill. 1994).

Indian Motorcycle, 66 F.3d at 1254.

tradition. If this is not the case, it would behoove the legislature to amend the Commercial Transactions Act in order to fulfill its purpose of certainty and uniformity in commercial dealings. This is an issue for the Puerto Rico legislature, not for the judicial branch.

Since the exclusion language of Article 9-104(j) is undoubtedly clear, we are forced to adopt the Puerto Rico Supreme Court's interpretation of the Civil Code according to Building Maintenance. Thus, PRLP has a perfected pre-petition security interest on all of Debtors' rents by virtue of its valid and notarized collateral assignment of rent agreements.

In view of the foregoing, the Court grants PRLP's motion for summary judgment, denies Debtors' motion for summary judgment and consequently Grants PRLP's motion prohibiting the use of its cash collateral until the Debtors move the Court accordingly.

SO ORDERED.

In San Juan Puerto Rico, this 14 day of January, 2014.

*Mildred Caban*

Mildred Caban Flores
U.S. Bankruptcy Judge

20