IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

**MANUEL MEDIAVIAVILLA, INC.,**

Debtor

**CASE NO. 13-2800 (MCF)**

**CHAPTER 11**

IN RE:

**MANUEL MEDIAVILLA & MAYDIN G. MELENDEZ,**

Debtors

**CASE NO. 13-2802 (MCF)**

**CHAPTER 11**

OPINION AND ORDER

Before the Court are the confirmation of the Amended Chapter 11 Joint Plan (the "Joint Plan") filed by Manuel Mediavilla, Inc. (the "corporate debtor") and Manuel Mediavilla and Maydin Melendez (the "individual debtors")(collectively referred to as "Debtors"), the objection to confirmation and subsequent request for conversion to a Chapter 7 case filed by PRLP 2011 Holdings LLC ("PRLP"). For the reasons included herein, the Court orders Debtors to amend the Joint Plan and denies the request to convert both cases to Chapter 7.

**I – JURISDICTION**

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a) and the general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

## II – CASE BACKGROUND

Debtors own several commercial real properties in Humacao, Puerto Rico. In 2006, the corporate debtor obtained a loan from Banco Popular de Puerto Rico ("BPPR") which was guaranteed by the individual debtors and all but one of Debtors' commercial properties.[1] BPPR transferred the loan to PRLP in 2011. Debtors and PRLP were unable to renegotiate the terms of the loan, resulting in the filing of a local court action for collection and foreclosure proceedings. The local court litigation spilled over to the bankruptcy court when the corporate and individual debtors filed for bankruptcy to prevent the execution of a pre-judgment attachment of their rents, the foreclosure of their real properties and with the hope of re-negotiating the loan obligation with PRLP. Through the pendency of this case the parties have arduously litigated their positions resulting in the necessary extension of the confirmation process for over a year. After resolving a myriad of matters that directly impacted confirmation, Debtors' objections to PRLP's claims and PRLP's request for conversion or outright prevented the hearings from taking place the Court held its first of five hearings on February 24, 2015, and concluded on June 1, 2015.[2]

## III – FINDINGS OF FACTS AND PROCEDURAL HISTORY

1. The corporate debtor is a corporation incorporated under the laws of the Commonwealth of Puerto Rico whose sole shareholder is Mr. Manuel Mediavilla.

2. The individual debtors are the personal and joint guarantors of the corporate debtor's obligations to PRLP.

3. PRLP is a corporation incorporated under the laws of the Commonwealth of Puerto Rico.

---

[1] The individual debtors own an unencumbered commercial property that does not serve as collateral for the loan. Nevertheless, the rents received from the non-encumbered property and the future sale proceeds of such property will be used to support Debtors' Joint Plan.

[2] Debtors' objection to PRLP's Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case will be addressed in a separate opinion and order.

4. Debtors are dedicated to the commercial leasing and management of several real estate properties.

5. The corporate debtor owns several properties located at Font Martelo Ave. 146-152 and Asturianas Ward valued at $2.1 million.[3]

6. The individual debtors own several commercial real estate properties located at Font Martelo Ave. 124-126 valued at $400,000.[4]

7. Debtors' main income is derived from the rents received from leasing and administering the commercial properties.[5]

8. Prior to the filing of the petition, on August 16, 2006, the corporate debtor obtained a loan for $2,700,000 with an interest rate of 8.99% and a maturity date of 25 years from BPPR. The parties were to renegotiate the terms of the loan in five years.

9. To guarantee its loan, BPPR and the corporate debtor executed several mortgage agreements whereby the commercial properties would serve as collateral to the loan.

10. As an additional guarantee, BPPR and the individual debtors executed mortgage agreements whereby their commercial property would also serve as collateral for the loan.

11. The individual debtors executed several agreements whereby they would personally guarantee the loan.

12. BPPR obtained additional collateral from Debtors through several assignment of lease agreements whereby all the rent proceeds of Debtors' mortgaged properties would serve as collateral in favor of BPPR.[6]

---

[3] The parties have expressed that they are in agreement as to the value of the corporate debtor's collateral.
[4] The parties have expressed that they are in agreement as to the value of the individual debtors' collateral.
[5] The individual debtors also receive additional income through social security benefits.
[6] The collateral does not include the rent of the individual debtors' unencumbered property.

13. The commercial loan between BPPR and Debtors underwent several amendments between 2006 and 2011 in order to enhance the collateral provided to BPPR, adjust the interest rate and extend the maturity period of the loan.

14. On September 29, 2011, BPPR transferred its claims to PRLP as part of purchase of credits agreement between the two entities.

15. At the time of the transfer, Debtors were making monthly payments of $17,400 on the loan with a revised interest rate of 5% amortized over 25 years and they were current on the revised payments.

16. Debtors and PRLP were unable to renegotiate the terms of the agreement upon maturity of the loan and PRLP decided to request full payment of the loan and foreclose on the collateral.

17. On September 19, 2012, PRLP commenced a civil action against Debtors for collection of money and foreclosure of mortgages in the Commonwealth of Puerto Rico Court of First Instance, Humacao Section.

18. On March 8, 2013, the local court issued an order of attachment on Debtors' personal property, including all rents produced by Debtors' real properties encumbered by PRLP.

19. On March 25, 2013, Debtors filed a certiorari before the Commonwealth of Puerto Rico Court of Appeals.

20. On April 11, 2013, before the appellate court resolved the matter, each debtor filed for bankruptcy under Chapter 11 and the local court case was stayed.

21. On May 23, 2013, the corporate and individuals' cases were administratively consolidated.[7]

---

[7] Docket No. 24 in the corporate case and Docket No. 25 in the individuals' case.

22. On July 11, 2013, PRLP filed Proof of Claim No. 1 in the corporate case for $2,635,138.28 as fully secured.

23. On July 11, 2013, PRLP filed Proof of Claim No. 9 in the individual debtors' case for $2,635,138.28 as fully secured.

24. On October 22, 2013, PRLP amended both claims to include supporting documentation for its claims.

25. On October 22, 2013, the Court issued an opinion and order determining that PRLP had a perfected security interest over Debtors' rent proceeds which are PRLP's cash collateral.[8]

26. On November 20, 2013, the Debtors filed a Joint Disclosure Statement and Plan.[9]

27. On January 9, 2014, the Court approved a stipulation for the use of cash collateral whereby corporate and individual debtors would provide a monthly payment of $22,739 to PRLP.[10]

28. On January 29, 2014, the Court allowed the filing of one joint disclosure statement and plan stating that "The Debtors can file one plan and one disclosure statement. However, the Debtors will have to independently classify and treat all secured and unsecured claims for the corporate and individual cases."[11] The Joint Disclosure Statement was approved subject to the supplement required by the Court.[12]

29. On March 19, 2014, PRLP filed a motion to convert Debtors' cases to Chapter 7.[13]

---

[8] In re Manuel Mediavilla, Inc., 505 B.R. 94 (Bankr. D.P.R. 2013).

[9] Docket Nos. 111 & 112 in the corporate case and Docket Nos. 120 & 121 in the individuals' case.

[10] Docket No. 171 in the corporate case and Docket No. 181 in the individuals' case.

[11] Docket No. 183 in the corporate case and Docket No. 193 in the individuals' case.

[12] Docket Nos. 238 & 240 in the corporate case and Docket Nos. 246 & 248 in the individuals' case.

[13] Docket No. 198 in the corporate case and Docket No. 207 in the individuals' case. The hearing to consider PRLP's motion to convert was scheduled for April 9, 2014; nevertheless, the movant waived the thirty day determination period so the matter could be heard in connection to the first scheduled confirmation hearing since PRLP's motion to convert and the issues related to the confirmation were too intertwined. Docket No. 202 in the corporate case and Docket No. 212 in the individuals' case.

30. On April 12, 2014, Debtors filed the Joint Plan.[14]

31. On April 21, 2014, Debtors filed an objection to PRLP's Proof of Claim No. 1 in the corporate case as amended and PRLP's Proof of Claim No. 9 in the individuals' case as amended.[15]

32. On May 21, 2014, PRLP amended both claims for a second time to include $66,672.78 of pre-petition legal expenses which would increase the total amount of its claim to $2,701,810.06 in both cases. PRLP also amended the classification of its claims separating them into secured and unsecured in each case. Claim No. 1 in the corporate case as amended included a $2,110,000 secured portion and a deficiency of $591,812.06 as unsecured. Claim No. 9 in the individuals' case included a $400,000 secured portion and a deficiency of $2,301,811.06 as unsecured.

33. After addressing several related issues that needed to be resolved before a hearing on confirmation and conversion could take place, the Court scheduled a confirmation hearing for February 24, 2015.

34. As of February 18, 2015, Debtors had paid PRLP a total of $355,721.58 on post-petition adequate protection payments, which have been applied to the principal balance of the loan.[16] Debtors have continued making adequate protection payments which will be applied towards the principal of the debt until confirmation.

35. On February 24, 2015, the Court held the first of five hearings to address Debtors' confirmation and all related matters. The parties presented their opening statements and Mr. Manuel Mediavilla was duly sworn and testified.

Thereafter, the Court held the resolution of the motion to convert in abeyance until the confirmation hearing was held.

[14] Docket No. 211 in the corporate case and Docket No. 221 in the individuals' case.

[15] Dockets No. 229 & 261 in the corporate case and Dockets No. 237 & 269 in the individuals' case.

[16] The corporate debtor has paid $310,000 and the individual debtors have paid $44,700 in adequate protection payments for a total of $355,721.

36. At the hearing, the Court granted in part and denied in part PRLP's Objection to CRIM's claims, effectively disallowing the unsecured portion in the corporate debtor's claim and included in Class 5 as untimely filed, but allowing the secured portion of the claim filed in both cases included in Class 3A and 3B of the Joint Plan.

37. On March 2, 2015, Mr. Victor Quiñones was qualified as Debtors' expert witness, duly sworn and testified in favor of confirmation.

38. On March 9, 2015, Mr. Eduardo Soria was qualified as PRLP's expert witness, duly sworn and testified against confirmation.

39. On April 13, 2015, Mr. Eric Higuera, First Vice President of CPG Island Servicing was duly sworn and testified.[17]

40. On June 1, 2015, the parties presented their closing arguments and the Court took the matter under advisement.

## IV – OBJECTION TO CONFIRMATION

Debtors' Joint Plan contemplates payment of 100% of secured claims and a 5% distribution for unsecured creditors. After considering the fact that the cases had been administratively consolidated, the Court authorized the filing of one joint plan for both the individual and the corporate debtors despite PRLP's objections.[18] Nevertheless, since the cases had not been substantively consolidated, the Court requested that the Debtors independently classify and treat all secured and unsecured claims for the corporate and individuals' cases.[19] As such, Debtors filed a Joint Plan whereby the classes are either unique to each debtor or the

---

[17] CPG Island Servicing, LLC, supplies asset management and loan servicing to CPG and its affiliates, including PRLP.

[18] Docket No. 183 corporate case and Docket No. 193 individuals' case.

[19] Id.

classes are subdivided to clearly identify and treat the corporate claims and the individuals' claims separately. Debtors' Joint Plan includes seven classes:

- **Class 1** Administrative Claims

- **Class 2** Doral Bank's secured claim in the individuals' case

- **Class 3** CRIM's secured claims

  ➢ Class 3A CRIM's secured claim in the corporate case

  ➢ Class 3B CRIM's secured claim in the individuals' case

- **Class 4** PRLP's secured claim

  ➢ Class 4A PRLP's secured claim in the corporate case

  ➢ Class 4B PRLP's secured claim in the individuals' case

- **Class 5** Unsecured Government claims in the corporate case

- **Class 6** General Unsecured claims

  ➢ Class 6A General Unsecured claims for the corporate case

  ➢ Class 6B General Unsecured claims in the individuals' case

- **Class 7** Equity Security Holders of the corporate debtor.

<u>A - PRLP's Objection to Confirmation</u>

PRLP objects to the confirmation of Debtors' Joint Plan for the following reasons: (1) CRIM's claims are unimpaired and not allowed to vote; (2) Classification of two unsecured classes is "gerrymandering" to obtain an approving vote from an impaired class; (3) Debtors' used cash collateral without leave of court and without PRLP's consent (4) PRLP's claims are improperly classified since the cases are not substantially consolidated; (5) The Joint Plan does

not comply with 11 U.S.C. § 1129(b)(2)(A)[20] since it fails to provide for an adequate interest rate; (6) The Joint Plan violates the absolute priority rule; (7) The individual debtors have not shown that they are pledging all disposable income to pay unsecured creditors as required by § 1129(a)(15); (8) The Joint Plan is unfeasible; and (9) The Joint Plan was proposed in bad faith.

### 1. CRIM's Claims

PRLP alleges that Debtors' designation of CRIM's secured claims in Class 3A and 3B as impaired is for the sole purpose of obtaining an accepting class. PRLP alleges that CRIM's claims are not secured but entitled to priority treatment under § 507(a)(8). Even if characterized as secured, they must be afforded the same treatment (or better) as that provided by §§ 1129(a)(9)(C)[21] and 507(a)(8)(B).[22] Because CRIM's claims are being paid in full through the

---

[20] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

[21] The relevant portions of § 1129(a)(9)(C) states the following:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> …
> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--
> …
> (C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)).

11 U.S.C. § 1129(a)(9)(C).

[22] In its relevant parts § 507(a)(8) states:

> (a)The following expenses and claims have priority in the following order:
> …
> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for--
> …
> (B) a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

11 U.S.C. § 507(a)(8)(B) [our emphasis].

Joint Plan, with treatment at least as favorable as that required by § 1129(a)(9)(C) of the Bankruptcy Code, they are unimpaired and not entitled to vote to accept or reject the Plan.

Nevertheless, this Court already ruled on the issue of the classification of CRIM's claims as being partly secured on the first day of the confirmation hearing on February 24, 2015. This Court granted in part and denied in part PRLP's objection to CRIM's claims by allowing CRIM's secured claims and disallowing the unsecured portion of CRIM's claim since it was filed after the claims bar date for government entities.[23]  Thus, CRIM's claims as a secured creditor in Class 3A and 3B subsist, but its unsecured claim in the corporate case is no longer part of Class 5 government unsecured claims.

As proffered by the Debtors and CRIM, the claim filed by CRIM is secured based on a statutory lien created by local law[24] and therefore § 507(a)(8) is inapplicable because it only applies to unsecured claims of governmental units. In fact, the case law cited by PRLP does little to contradict Debtors' and CRIM's position since all the cases cited include unsecured priority tax claims, not one includes a secured government claim in relation to § 507(a)(8).[25]  PRLP has failed to convince the Court that § 1129(a)(9)(C) requires that Debtors classify and treat CRIM's secured claim as a priority claim.

Having found that CRIM's Class 3A and 3B claims are secured in both cases, the Court must determine whether the plan alters the legal, equitable or contractual rights of CRIM's claims to ascertain whether it is impaired and therefore has a right to vote pursuant to §

---

[23] Docket No. 363 in the corporate case and Docket No. 376 in the individuals' case.

[24] Article 3.30 of Act Number 83 of 1991, known as the Municipal Property Tax Act of 1991, 21 L.P.R.A. § 5080.

[25] In re Bryson Properties, XVIII, 961 F.2d 496 (4th Cir. 1992); In re MJS Las Croabas Props., 2013 Bankr. LEXIS 2257 (Bankr. D.P.R. 2013); In re Sabana Del Palmar, Inc., 2013 Bankr. LEXIS 2255 (Bankr. D.P.R. 2013); In re Perdido Motel Group, Inc., 101 B.R. 289 (Bankr. N.D. Ala. 1989); In re Winters, 99 B.R. 658 (Bankr. W.D. Pa. 1989).

1124(1).[26] Debtors' Joint Plan proposes the payment of CRIM's secured claims through thirty six equal monthly payments plus 3.5% interest; therefore, CRIM's legal rights are being altered since payment of property tax is due in full by a specific date. Consequently, CRIM's secured claims classified in Class 3A and 3B are impaired and entitled to vote. Consequently, CRIM's votes in Class 3A and 3B in favor of confirmation are valid and constitute an accepting impaired class for both the corporate and the individuals' cases.

### 2. "Gerrymandering"

PRLP alleges that the sole reason the corporate debtor separated government unsecured claims (Class 5) from general unsecured claims (Class 6) is because PRLP controls the general unsecured class and confirmation depends on its good graces.[27] PRLP argues that the corporate debtor decided to separate what would otherwise be deemed to be substantially similar claims with similar treatment in order to manufacture a class that would vote in favor of the Joint Plan. PRLP argues that this creation of artificial classes is considered "gerrymandering" and it is not allowed by § 1122(a).[28] Absent this separation of unsecured classes, the corporate debtor would not be able to obtain a consenting vote that would allow it to proceed with this confirmation since PRLP has voted to deny confirmation. Finally, PRLP alleges that the nominal amounts of the government unsecured claims do not warrant its own class and there is no good business reason that would warrant the separation of these claims.

---

[26] 11 U.S.C. 1124(1).

[27] The government unsecured class is limited to the corporate debtor since the individual debtors do not have any unsecured government claims.

[28] Section 1122, which governs classification of claims or interests, reads as follows:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122

The corporate debtor states that it has the discretion of classifying government unsecured claims separately from general unsecured claims since § 1122(a) prohibits filing different claims together, not filing similar claims separately. The corporate debtor states that these claims are different in nature because government tax claims are unilaterally imposed by the pertinent taxing authority, unlike trade debts which are subject to a bilateral agreement based on good faith negotiations. The corporate debtor also states that the government unsecured claims were separated into its own separate class to clarify that such claims are limited to the corporate debtor and they do not apply to the individual debtors.

To confirm a Chapter 11 bankruptcy case, a debtor needs to comply with all the requirements of § 1129(a) including acceptance of the plan by all impaired classes. 11 U.S.C. § 1129(a)(8).[29] Nevertheless, confirmation can proceed via "cramdown" with the acceptance of at least one voting class in accordance to § 1129(b)(1) if all other requirements under § 1129(a) are met. 11 U.S.C. § 1129(b)(1).[30] As previously mentioned, CRIM's secured claims included in Class 3A and 3B have been deemed allowed in both the individuals' and the corporate cases. CRIM's secured claims have been deemed to be impaired and thus entitled to vote on the confirmation of the Joint Plan. CRIM has voted in favor of the confirmation of the Joint Plan. As a result, the corporate debtor does not need to "manufacture" a voting class because it has already obtained the accepting vote of CRIM's impaired class 3A, satisfying the requirement of § 1129(b)(1). Any gerrymandering argument in relation to Classes 5 and 6 therefore becomes

---

[29] In its relevant parts § 1129(a)(8) states: "(a) The court shall confirm a plan only if all of the following requirements are met: … (8) With respect to each class of claims or interests-- (A) such class has accepted the plan; or (B) such class is not impaired under the plan."

[30] In its relevant parts § 1129(b)(1) states:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

-12-

moot. Having one consenting impaired class that favors confirmation in both cases, Debtors will need to show that the Joint Plan is fair and equitable and does not unfairly discriminate against the other creditors in order to confirm via "cramdown" pursuant to § 1129(b)(1) & (2).

### 3. Debtors' used cash collateral without leave of court and without PRLP's consent

PRLP objects to the proposed plan alleging that Debtors have used cash collateral without leave of court. At the beginning of the case, there was a dispute on whether PRLP had a perfected security interest over Debtors' rent proceeds which was a novel issue in our jurisdiction at the time of its resolution.[31] During the resolution of this contested matter, Debtors were authorized the limited use of cash collateral in an interim basis starting on June 17, 2013, which was extended on several occasions. This Court ultimately found that PRLP did have a perfected security interest over Debtors' rents which constituted PRLP's cash collateral. Such opinion and order laid the foundation for the joint stipulation for the use of cash collateral filed on January 3, 2014, which was subsequently extended until the confirmation hearing.[32] From the date of the approval of the joint stipulation for the use of cash collateral up until the confirmation hearing held on February 24, 2015, Debtors had paid a total of $355,721.28. Debtors have continued to make adequate protection payments to PRLP and they are current on cash collateral payments.

PRLP has benefited from the adequate protection payments totaling over $350,000, which have significantly reduced its pre-petition claims. Although Debtors' may have exceeded the amounts authorized at the early stages of the case, they were for extraordinary expenses

---

[31] Unlike most jurisdictions which require the filing of a UCC statement to perfect a security interest over rent proceeds, the court determined that the Commonwealth of Puerto Rico's version of the UCC ("Act No. 208 of August 17, 1995, as amended by the Secured Commercial Transactions Act, Act. No. 241 of September 19, 1996, 19 L.P.R.A. §§ 2101 et seq.) does not provide a mechanism to perfect a security interest over rents. Instead, a security interest over rents can only be perfected if it is expressly stated within a deed of mortgage properly registered in the property registry or with a notarized document with a "date certain". Mediavilla, 505 B.R. 94.

[32] Docket No. 246 in the corporate case and Docket No.

-13-

which were justified. Such expenses benefited the estate and PRLP, since they improved the commercial properties that serve as collateral to PRLP's claims and facilitated the individual debtors' endeavors as administrators of the commercial real estate business. Moreover, at the confirmation hearings Debtors were able to show that any deficiency in adequate protection payments were offset by later payments which made up the difference and in fact they had slightly overpaid the total amount of adequate protection payments due over the life of this case. Although unauthorized use of cash collateral may be deemed as cause for dismissal under § 1112(b)(4)(D), PRLP did not provide any evidence of the substantial harm such actions caused to any creditor including PRLP. On the contrary, PRLP has been the beneficiary of more than $350,000 in adequate protection payments in both cases and the Debtors are taking proper care of the commercial properties that serve its collaterals.

### 4. PRLP's claims are classified as substantially consolidated.

The Joint Plan as written does not contemplate consolidation of PRLP's claims. At the confirmation hearing, Debtors attempted to substantively consolidate PRLP's claims in both cases, without substantively consolidating both Debtors' estates. PRLP objects to having its claims substantively consolidated when the cases are only administratively consolidated. PRLP filed Proof of Claim No. 1 in the corporate case and Proof of Clam No. 9 in the individuals' case on July 11, 2013, for the amount of $2,635,138.28 as fully secured in each case. The claims were both amended on October 22, 2013, to include supporting documentation. The claims were amended a second time on May 21, 2014, to include pre-petition attorney's fees for $66,672.78 increasing the total amount of its claim to $2,701,810.06 in both cases. PRLP also amended the treatment of its claims separating them into secured and unsecured in each case. Claim No. 1 in the corporate case as amended included a $2,110,000 secured portion and an unsecured

-14-

deficiency of $591,812.06. Claim No. 9 in the individuals' case included a $400,000 secured portion and an unsecured deficiency of $2,301,811.06.

Debtors' classified PRLP's secured claims as part of Class 4 and its unsecured claims as part of general unsecured Class 6. However, due to the adequate protection payments made throughout the pendency of this case, Debtors allege at the hearing for confirmation that the unsecured portion of PRLP's claims have been extinguished in both cases. Debtors' assert that since the aggregate value of the collateral in both cases exceeds the value of PRLP's claims this creditor no longer has an unsecured deficiency. Debtors allege that the payment of $355,721.58 of post-petition adequate protection payments have reduced the balance of PRLP's claim below the value of the collaterals in the corporate case ($2,110,000) and the individuals' case ($400,000). Since the collaterals in both cases are collectively worth $2,510,000 and the current balance of PRLP's claims is $2,346,089.48 including pre-petition attorney's fees, PRLP's claim is oversecured. Debtors allege that there is one loan which is fully secured by two sources of collateral and that treating it otherwise would be tantamount to having two independent loans. Debtors state that since the Joint Plan proposes to pay 100% of PRLP's claims as secured, the payment of any alleged unsecured portion would cause an overpayment of PRLP's claims to the detriment of the estate and other creditors.

PRLP concedes that the Debtors have been making adequate protection payments and that those payments have been applied to the loan principal, effectively reducing the amount of the loan by the exact amount of such payments. The parties are in agreement that as of the date of the confirmation hearing the Debtors have collectively reduced the principal balance of the loan by $355,721.58. The parties are also in agreement that the value of the corporate collateral is $2,110,000 and the value of the individuals' collateral is $400,000. Nevertheless, PRLP disagrees with Debtors' proposal that the value of the collateral that are encumbered by PRLP in

both estates must be combined in order to assess the secured and unsecured portions if any of PRLP's loan.

PRLP argues that although the two cases have been administratively consolidated, the extent of PRLP's secured status in each case should be treated separately. According to the supporting documents provided by PRLP, each debtor jointly and severally guarantees PRLP's claims in full; thus, each debtor responds fully for PRLP's claims and PRLP has a deficiency balance in each case pursuant to § 506(a). The corporate debtor's collateral is worth $2,100,000 which is less than the current balance of its claim even if pre-petition attorney's fees are disallowed. This is even more evident in the individuals' case since the collateral is worth $400,000 which is less than the current balance of its claim with or without pre-petition attorney's fees. Consequently, both cases have a secured and an unsecured portion whose classification should survive separately, even if, jointly, the claims will be paid in full by both Debtors. Essentially, the Debtors are treating these cases as if they had been substantively consolidated when in reality they have been administratively consolidated and such merging of PRLP's claims is impermissible.

Alternatively, PRLP states that if the claims were somehow consolidated and the adequate protection payments have extinguished its unsecured deficiency, it would be entitled to post-petition interests from the moment that its claims became oversecured. PRLP asserts that it behooves Debtors to inform the Court at what point its claims allegedly became oversecured and therefore PRLP was entitled to request post-petition interests. Absent the calculation of post-petition interest the amount of the claim cannot be reconciled and the payment of PRLP's claims will be based on an incorrect claim amount.

The Court allowed Debtors to file a Joint Disclosure Statement and Plan since the cases were administratively consolidated. However, the Court also warned Debtors that all claims

would have to be independently classified and treated for each case. PRLP filed two different proofs of claim related to two independent bankruptcy debtors;[33] the fact that the cases were administratively consolidated does not change this fact.

The Bankruptcy Code allows for joint administration of spouse's bankruptcy cases. 11 U.S.C. § 302. There are no provisions in the Bankruptcy Code that expressly govern the administration of other cases. However, Rule 1015(b) of the Federal Rules of Bankruptcy Procedure provides that joint administration may be appropriate when two or more related debtor entities, whether spouses, partnerships or corporations, file for bankruptcy. Fed. R. Bankr. P. 1015(b). Administratively consolidated cases remain independent even though they are administered jointly for procedural and practical purposes, to prevent duplicate costs and waste of the parties' and the court's time and resources. To this effect the Court of Appeals for the Eleventh Circuit has stated that:

> Joint administration is a procedural tool permitting use of a single docket for administrative matters, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ministerial matters that may aid in expediting the cases. Used as a matter of convenience and cost saving, it does not create substantive rights.

Reider v. Federal Deposit Ins. Corp. (In re Reider), 31 F.3d 1102 (11th Cir. 1994). Joint administration must not be confused with substantive consolidation. The substantive rights of creditors are not affected by joint administration. In re Ben Franklin Retail Stores, Inc., 214 B.R. 852 (Bankr. N.D. Ill. 1997). By contrast, substantive consolidation may profoundly affect the substantive rights of creditors, since the estates are merged and creditors have claims against the same pool of assets. Id. at 857.

---

[33] Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case.

Debtors' actions to pool their collaterals together for the purpose of only recognizing one secured claim that will be paid in full is equivalent to a substantive consolidation, which has not been requested or approved in these cases. Debtors provide no legal basis for the substantive consolidation of one creditor's claims without consolidating all creditors' claims in both cases. Since the administratively consolidated cases have independent estates, each case should be analyzed separately and should propose its own classification of claims. Since both the corporate debtor and the individual debtors independently respond for the totality of PRLP's loan and their specific collaterals are not worth more individually than PRLP's claims, they both have a deficiency that they need to provide for independently in the Joint Plan. As a result, PRLP has a secured claim up to the value of its collateral in the corporate case for $2,100,000 and in the individuals' case for $400,000, respectfully. The difference between the value of the collaterals in each case and PRLP's proofs of claim in each case, as reduced by adequate protection payments, will therefore be the unsecured deficiency portions of its claims and proper treatment should be provided for them under the Joint Plan.

Since Debtors have not requested the substantive consolidation that might allow for the treatment of PRLP's claims as fully secured by both estates, the Joint Plan as proposed cannot be confirmed at this juncture. The Court will not address the remaining objections to confirmation raised by PRLP since Debtors would need to amend their plan to properly classify and treat PRLP's claims separately which could possibly affect the interest rate proposed for the secured claims, the disposable income available in the individuals' case, the feasibility of the plan or whether the plan violates the absolute priority rule.

### V – MOTION TO CONVERT TO CHAPTER 7

PRLP moves to convert this case under § 1112(b)(1) alleging that all the factors laid out in its objection to confirmation are also cause for conversion since the Joint Plan cannot be

confirmed and the Debtors are unable to present a confirmable plan. PRLP alleges that a conversion to a Chapter 7 case, rather than dismissal, is in the best interest of the estate because the Debtors will simply re-file for bankruptcy if the case is dismissed. PRLP adds that under a Chapter 7 scenario the value of the estate would be maximized since a trustee will be able to reach assets, pursue insider claims, voidable transfers and liquidate accounts. A trustee will be able to orderly liquidate the estate which will benefit priority creditors.

A determination under § 1112(b) "invokes a two-step analysis, first, to determine whether 'cause' exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate." In re Superior Siding v. Window Inc., 14 F.3d 240, 242 (4th Cir. 1994). Once cause to convert or dismiss is established, the court shall convert the case to Chapter 7 or dismiss unless there are "unusual circumstances" specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time and that the debtor will cure any grounds for dismissal within a reasonable time fixed by the court. 11 U.S.C § 1112(b)(2).

The considerable cash collateral payments made by Debtors' prompted them to argue that PRLP's deficiency claim had been extinguished. Debtors' erroneous treatment of PRLP's claims under the plan by consolidating its claims under one secured claim has effectively rendered the Joint Plan unconfirmable as filed. Nevertheless, there is no evidence on the record that shows that Debtors' actions were anything other than an honest attempt to present a confirmable plan or that the Debtors were employing delay tactics to obtain a benefit. Section 1112 indicates that a case shall be converted or dismissed if cause for conversion is found, unless unusual circumstances dictate that such course of action is not in the best interest of creditors and the estate. Additionally, a debtor must justify and cure their acts within the time

fixed by the court and there must be a reasonable likelihood that a plan will be confirmed within a reasonable time.

In this case, extraordinary circumstances exist that would prevent conversion to a Chapter 7 liquidation case.  Debtors have a stable business that is generating revenue for both creditors and the estate.  Debtors have made improvements to the properties in the best interest of present and future tenants.  Debtors' liquidation analysis shows that liquidation under a Chapter 7 scenario would not yield any dividends to unsecured creditors.  PRLP has failed to meet its burden to show that conversion is in the best interest of creditors and the estate. In fact, PRLP has admitted that a trustee would probably abandon the real estate properties since they are fully encumbered.[34]  No creditor has raised any concerns regarding insider claims, hidden assets, or voidable transfers. Therefore, the alleged benefit that a chapter 7 trustee would bring to the table is questionable and highly speculative, possibly yielding no benefit at all.  PRLP's general assumption that a trustee would provide equality of distribution and oversight to maximize the value of the estate is unfounded.  Moreover, it has failed to show that Debtors' business and operations are in need of oversight, that they cannot maximize the value of the estate or that they are unable to provide proper distributions in accordance with the Bankruptcy Code.  To the contrary, throughout the life of this case Debtors have shown their commitment with these bankruptcy proceedings and their willingness to make the necessary adjustments to propose a confirmable plan.  To this effect Debtors' have reduced their personal expenses and their administration fee in order to increase payment to PRLP. They have made improvements to the collateral to retain tenants and protect the collaterals.  They have good relationships with

---

[34] In its post-trial brief at p.61 PRLP states:  "In a chapter 7 case, PRLP will receive its collateral because a chapter 7 trustee would be required to abandon the PRLP collateral, because in each of the two bankruptcy cases, the collateral would be overencumbered". Docket No. 376 in the corporate case and Docket No. 391 in the individuals' case.

-20-

their tenants. They have stable tenants with a good payment history. Its most important tenants are making their own improvements to the leased properties which is a strong sign of their willingness to remain at the leased properties for an extended period of time. They have identified unencumbered property to sell in order to provide additional funding to the plan. They have pledged to contribute their social security to partially fund the plan. They are current on insurance payments and payment of U.S. Trustee's fees. They have complied with their bankruptcy obligations including the filing of operating reports. They paid over $355,721 to PRLP through the pendency of these cases and are current on adequate protection payments.

Converting these cases would effectively sacrifice a stable business and the income stream of both Debtors for the benefit of only one secured creditor that is receiving larger monthly payments than it was receiving under the terms of the pre-petition loan agreement. Since PRLP is being provided adequate protection payments it will not be adversely affected if a brief and final opportunity is granted to the Debtors to correct the classification and distribution of PRLP's secured claims in Class 4A and 4B and its unsecured claims in Class 6A and 6B, respectively. Debtors' Joint Plan correctly included a secured and an unsecured element for PRLP's claims for both Debtors; therefore, the deficiencies in the current plan could easily be cured within a reasonable period of time. Finally, there is a reasonable likelihood that a plan will be confirmed since the Debtors have a steady stream of revenues. The largest claim has been significantly reduced and the changes to the plan are not transcendental; nevertheless, this determination will be made by the Court when it analyzes the feasibility of the new plan proposed along with the remaining objections to confirmation, which the Court cannot entertain at this juncture since they could be affected by the Debtors' course of action.

-21-

## VI - CONCLUSION

For the reasons stated herein, PRLP's motion to convert to a Chapter 7 case is denied. The Court orders Debtors to amend its Joint Chapter 11 Plan of Reorganization within twenty eight (28) days in accordance to this decision.

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of June, 2015.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge