IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | **CASE NO. 13-2800 (MCF)** |
| **MANUEL MEDIAVIAVILLA, INC.,** | **CHAPTER 11** |
| Debtor | |
| IN RE: | **CASE NO. 13-2802 (MCF)** |
| **MANUEL MEDIAVILLA & MAYDIN G. MELENDEZ,** | **CHAPTER 11** |
| Debtors | |

## <u>OPINION AND ORDER</u>

Before the Court are Manuel Mediavilla, Inc.'s (the "corporate debtor"), Manuel Mediavilla and Maydin Melendez' (the "individual debtors")(collectively referred to as "Debtors") objections to PRLP's Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case.[1] For the reasons explained herein, the Court denies Debtors' objection to PRLP's claims.

## I – JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. § 157(a) and the

---

[1] Any reference to the corporate case refers to Case No. 12-2800 and any reference to the individuals' case refers to Case No. 12-2802.

general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court (Torruellas, C.J.). This is a core proceeding, pursuant to 28 U.S.C. § 157(b).

### III – FINDINGS OF FACTS AND PROCEDURAL HISTORY

1. The corporate debtor is a corporation incorporated under the laws of the Commonwealth of Puerto Rico whose sole shareholder is Mr. Manuel Mediavilla.

2. The individual debtors are the personal and joint guarantors of the corporate debtor's obligations to PRLP.

3. PRLP is a corporation incorporated under the laws of the Commonwealth of Puerto Rico.

4. Debtors are dedicated to the commercial leasing and management of several real estate properties.

5. The corporate debtor owns several properties located at Font Martelo Ave. 146-152 and Asturianas Ward valued at $2.1 million.[2]

6. The individual debtors own several commercial real estate properties located at Font Martelo Ave. 124-126 valued at $400,000.[3]

7. Debtors' main income is derived from the rents received from leasing and administering the commercial properties.[4]

8. Prior to the filing of the petition, on August 16, 2006, the corporate debtor obtained a loan for $2,700,000 with an interest rate of 8.99% and a maturity date of 25 years from BPPR. The parties were to renegotiate the terms of the loan in five years.

9. To guarantee its loan, BPPR and the corporate debtor executed several mortgage agreements whereby the commercial properties would serve as collateral to the loan.

10. The mortgages that guarantee the loan provide PRLP the right to attorney's fees, costs and expenses in case of a judicial claim or foreclosure proceeding up to 10% of the mortgage principal amount.

---

[2] The parties have expressed that they are in agreement as to the value of the corporate debtor's collateral.
[3] The parties have expressed that they are in agreement as to the value of the individual debtors' collateral.
[4] The individual debtors also receive additional income through social security benefits.

11. As an additional guarantee, BPPR and the individual debtors executed mortgage agreements whereby their commercial property would also serve as collateral for the loan.

12. The individual debtors executed several agreements whereby they would personally guarantee the loan.

13. BPPR obtained additional collateral from Debtors through several assignment of lease agreements whereby all the rent proceeds of Debtors' mortgaged properties would serve as collateral in favor of BPPR.[5]

14. The commercial loan between BPPR and Debtors underwent several amendments between 2006 and 2011 in order to enhance the collateral provided to BPPR, adjust the interest rate and extend the maturity period of the loan.

15. On September 29, 2011, BPPR transferred its claims to PRLP as part of purchase of credits agreement between the two entities.

16. At the time of the transfer, Debtors were making monthly payments of $17,400 on the loan with a revised interest rate of 5% amortized over 25 years and they were current on the revised payments.

17. Debtors and PRLP were unable to renegotiate the terms of the agreement upon maturity of the loan and PRLP decided to request full payment of the loan and foreclose on the collateral.

18. On September 19, 2012, PRLP commenced a civil action against Debtors for collection of money and foreclosure of mortgages in the Commonwealth of Puerto Rico Court of First Instance, Humacao Section.

19. On March 8, 2013, the local court issued an order of attachment on Debtors' personal property, including all rents produced by Debtors' real properties encumbered by PRLP.

20. On March 25, 2013, Debtors filed a certiorari before the Commonwealth of Puerto Rico Court of Appeals.

21. On April 11, 2013, before the appellate court resolved the matter, each debtor filed for bankruptcy under Chapter 11 and the local court case was stayed.

22. On May 23, 2013, the corporate and individuals' cases were administratively consolidated.[6]

---

[5] The collateral does not include the rent of the individual debtors' unencumbered property.

23. On July 11, 2013, PRLP filed Proof of Claim No. 1 in the corporate case for $2,635,138.28 as fully secured.

24. On July 11, 2013, PRLP filed Proof of Claim No. 9 in the individual debtors' case for $2,635,138.28 as fully secured.

25. The deadline to file a proof of claim for non-government entities was August 11, 2013, in both cases.[7]

26. The deadline to file a proof of claim for non-government entities was October 21, 2013, in both cases.[8]

27. On October 22, 2013, PRLP amended both claims to include supporting documentation for its claims.

28. On October 22, 2013, the Court issued an opinion and order determining that PRLP had a perfected security interest over Debtors' rent proceeds which are PRLP's cash collateral.[9]

29. On November 20, 2013, the Debtors filed a Joint Disclosure Statement and Plan.[10]

30. On January 9, 2014, the Court approved a stipulation for the use of cash collateral whereby corporate and individual debtors would provide a monthly payment of $22,739 to PRLP.[11]

31. On January 29, 2014, the Court allowed the filing of one joint disclosure statement and plan stating that "The Debtors can file one plan and one disclosure statement. However, the Debtors will have to independently classify and treat all secured and unsecured claims for the corporate and individual cases."[12] The Joint Disclosure Statement was approved subject to the supplement required by the Court.[13]

32. On March 19, 2014, PRLP filed a motion to convert Debtors' cases to Chapter 7.[14]

---

[6] Docket No. 24 in the corporate case and Docket No. 25 in the individuals' case.

[7] Docket No. 9 in the corporate case and Docket No. 10 in the individuals' case.

[8] Id.

[9] In re Manuel Mediavilla, Inc., 505 B.R. 94 (Bankr. D.P.R. 2013).

[10] Docket Nos. 111 & 112 in the corporate case and Docket Nos. 120 & 121 in the individuals' case.

[11] Docket No. 171 in the corporate case and Docket No. 181 in the individuals' case.

[12] Docket No. 183 in the corporate case and Docket No. 193 in the individuals' case.

[13] Docket Nos. 238 & 240 in the corporate case and Docket Nos. 246 & 248 in the individuals' case.

[14] Docket No. 198 in the corporate case and Docket No. 207 in the individuals' case. The hearing to consider PRLP's motion to convert was scheduled for April 9, 2014; nevertheless, the movant waived the thirty day determination period so the matter could be heard in connection to the first scheduled confirmation hearing since PRLP's motion to convert and the issues related to the confirmation were too intertwined. Docket No. 202 in the corporate case and Docket No. 212 in the individuals' case. Thereafter, the Court held the resolution of the motion to convert in abeyance until the confirmation hearing was held.

33. On April 12, 2014, Debtors filed the Joint Plan.[15]

34. On April 21, 2014, Debtors filed an objection to PRLP's Proof of Claim No. 1 in the corporate case as amended and PRLP's Proof of Claim No. 9 in the individuals' case as amended.[16]

35. On May 21, 2014, PRLP amended both claims for a second time to include $66,672.78 of pre-petition legal expenses which would increase the total amount of its claim to $2,701,810.06 in both cases. PRLP also amended the classification of its claims separating them into secured and unsecured in each case. Claim No. 1 in the corporate case as amended included a $2,110,000 secured portion and a deficiency of $591,812.06 as unsecured. Claim No. 9 in the individuals' case included a $400,000 secured portion and a deficiency of $2,301,811.06 as unsecured.

36. On May 26, 2014, Debtors' filed a supplement to its objection to PRLP's proofs of claim to address the changes proposed by PRLP in its second amendments to its proofs of claim in both cases.

37. After addressing several related issues that needed to be resolved before a hearing on confirmation and conversion could take place, the Court scheduled a confirmation hearing for February 24, 2015.

38. As of February 18, 2015, Debtors had paid PRLP a total of $355,721.58 on post-petition adequate protection payments, which have been applied to the principal balance of the loan.[17] Debtors have continued making adequate protection payments which will be applied towards the principal of the debt until confirmation.

39. On February 24, 2015, the Court held the first of five hearings to address Debtors' confirmation and all related matters. The parties presented their opening statements and Mr. Manuel Mediavilla was duly sworn and testified.

40. At the hearing, the Court granted in part and denied in part PRLP's Objection to CRIM's claims, effectively disallowing the unsecured portion in the corporate debtor's claim and included in Class 5 as untimely filed, but allowing the secured portion of the claim filed in both cases included in Class 3A and 3B of the Joint Plan.

---

[15] Docket No. 211 in the corporate case and Docket No. 221 in the individuals' case.

[16] Dockets No. 229 & 261 in the corporate case and Dockets No. 237 & 269 in the individuals' case.

[17] The corporate debtor has paid $310,000 and the individual debtors have paid $44,700 in adequate protection payments for a total of $355,721.

41. On March 2, 2015, Mr. Victor Jimenez was qualified as Debtors' expert witness, duly sworn and testified in favor of confirmation.

42. On March 9, 2015, Mr. Eduardo Soria was qualified as PRLP's expert witness, duly sworn and testified against confirmation.

43. On April 13, 2015, Mr. Eric Higuera, First Vice President of CPG Island Servicing was duly sworn and testified in relation to the proofs of claim filed by PRLP in both cases.[18]

44. On June 1, 2015, the parties presented their closing arguments and the Court took the matter under advisement.

## III – OBJECTION TO PRLP'S PROOF OF CLAIM NO. 1 IN THE CORPORATE CASE AND PROOF OF CLAIM NO. 9 IN THE INDIVIDUAL DEBTORS' CASE

The corporate debtor scheduled PRLP in schedule D of its bankruptcy petition as having a contingent and disputed secured claim for $2,469,874.01 secured by collateral worth 2,241,000 leaving an unsecured deficiency of $228,874.01.  In turn, the individual debtors scheduled PRLP in schedule D of their bankruptcy petitions as having a secured unliquidated claim of $500,000 secured by collateral worth $400,000 leaving an unsecured deficiency balance of $100,000.

PRLP filed Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case on July 11, 2013, for the amount of $2,635,138.28 as fully secured in each case. Both claims were amended on October 22, 2013, to include supporting documentation. Thereafter, the claims were amended a second time on May 21, 2014, to include pre-petition attorney's fees, costs and expenses of $66,672.78, increasing the total amount of its claim to $2,701,810.06 in both cases.  PRLP also amended the treatment of its claims by separating them into secured and unsecured in each case.  Claim No. 1 in the corporate case, as amended, included a $2,110,000 secured portion and an unsecured deficiency of $591,812.06.  Claim No. 9 in the individuals' case included a $400,000 secured portion and an unsecured deficiency of $2,301,811.06.

### 1. Debtors' Position

Debtors object to PRLP's amended claims in both cases for two reasons: First, Debtors allege that the attorney's fees, costs and expenses added to the proofs of claim are time barred

---

[18] CPG Island Servicing, LLC supplies asset management and loan servicing to CPG and its affiliates, including PRLP.

since they were filed on May 21, 2014, almost ten months after the non-government claims bar date expired on August 19, 2013. Secondly, Debtors allege that PRLP's claims need to be adjusted to reflect the adequate protection payments received post-petition.

Debtors allege that the pre-petition attorney's fees, costs and expenses represent an increase in the amount of the original claims that were timely filed by PRLP. Therefore, the $66,672 claimed for attorney's fees, costs and expenses should be considered as a new claim that was untimely filed just nine days prior to the first confirmation hearing. Alternatively, Debtors argue that the request for attorney's fees, costs and expenses stems from pre-petition litigation with the same parties including the same legal representation of PRLP. Consequently, there is no excuse for such an untimely amendment ten months after the claims bar date for non-government entities. Debtors allege that the request for pre-petition attorney's fees, costs and expenses should have been included within the original proofs of claim filed before the deadline expired. Debtors add that the amended proofs of claims do not demonstrate that PRLP are entitled to pre-petition fees. There is no fee arrangement disclosed and no fee itemization. There is excessive lumping. They have not established that the fees are reasonable. Debtors also call for equitable discretion of the Court to disallow the pre-petition attorney's fees, costs and expenses on the grounds that it would prejudice the Debtors and other creditors if it were to be allowed at this juncture of confirmation.

As to the second part of its objection, Debtors argue that they have made post-petition adequate protection payments that should be applied to the principal of the debt. Debtors allege that the adequate protection payments made throughout the life of this case have reduced their claims with PRLP considerably and will continue to do so with every subsequent payment until their Joint Plan is confirmed. Hence, they conclude that PRLP's claims in both cases should be reduced by the total amount of payments made by the Debtors.

2. PRLP's Position

PRLP responds to Debtors' allegations by stating that the original Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case were timely filed within the claims bar deadline. It argues that it is entitled to amend its timely filed claims and the Court has ample discretion to allow such amendments after the bar date, considering that its original claims were timely filed. PRLP states that its request for pre-petition attorney's fees, costs and

expenses is based on the several agreements entered into by the parties that provide for attorney's fees, costs and expenses in case of default and subsequent collection and foreclosure actions. PRLP argues that such agreements provide for $263,513 in attorney's fees, costs and expenses which represents a 10% charge based on the principal amount of the loan ($2,635,130). Nevertheless, PRLP argues that it is only requesting the payment of $66,672 in attorney's fees, costs and expenses which is approximately one fourth of the $263,513 amounts that it is entitled to collect pursuant to the agreements. PRLP alleges that the amounts requested are not a new claim and that the attorney's fees, costs and expenses are reasonable. To support its position, PRLP's presented, Eric Higuera, who testified about the rates of the law firm that worked on the pre-petition local court case, the amount of work performed in relation to the state court case and the many hearings that took place through the pendency of the state court proceeding until the case was stayed by this bankruptcy proceeding. As a result, PRLP requests that the pre-petition attorney's fees, costs and expenses be allowed as part the amended claims in both cases.

PRLP concedes that the Debtors have been making adequate protection payments and that those payments have been applied to the loan principal, effectively reducing the amount of the claims by the exact amount of such payments. The parties are in agreement that as of the date of the confirmation hearing the Debtors have collectively reduced the principal balance of the loan by $355,721.58.

### 3. Legal Analysis

The filing of proofs of claim in bankruptcy proceedings is governed by 11 U.S.C. § 501.[19] A timely filed proof of claim is deemed allowed, unless an objection is filed pursuant to § 502. In turn, Rule 3003(c) of the Federal Rules of Bankruptcy Procedure sets out the requirements for filing a proof of claim in Chapter 11 cases. A proof of claim executed and filed in accordance with the rules shall constitute prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Thus, claims for which proper proofs have been filed are deemed allowed unless an objection is filed. In re Alonso, 525 B.R. 195, 203 (Bankr. D.P.R. 2015). In this case, it is undisputed that PRLP timely filed its original proofs of claim in both cases and that the Debtors filed objections to the proofs of claim as amended.

---

[19] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (the "Bankruptcy Code").

The Bankruptcy Code does not specifically address the issue of amending a timely filed proof of claim. The equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court. In re AM Int'l, Inc., 67 B.R. 79, 81 (Bankr. N.D.Ill. 1986). In the First Circuit, amendments to timely proofs of claim have been liberally permitted to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. In re Hemingway Transp., 954 F.2d 1, 10 (1st Cir.1992). Nevertheless, in order to authorize amendments the court must ensure that corrections or adjustments do not set forth wholly new grounds of liability. Matter of Commonwealth Corp., 617 F.2d 415, 420 (5th Cir.1980).

As a general rule, amendments intended merely to increase the amount of a claim grounded in the same right to payment are not considered "new" claims under the Code. Hemingway, 954 F.2d at 10. However, the fact that amendments are liberally permitted does not mean that that such amendments are automatic. In re Martinez, 513 B.R. 779, 784 (Bankr. D.P.R. 2014); In re W.T. Grant Co., 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985). To permit an amendment to a timely filed proof of claim the courts must scrutinize the substance of the original proof of claim and the proposed amendment in light of three criteria: (1) The proposed amendment must not assert a new right to payment, (2) the amendment must not result in unfair prejudice to other unsecured creditors, and (3) the amendment must not be the product of bad faith or dilatory tactics on the part of the claimant. Hemingway, 954 F. 2d at 10.

A creditor's entitlement to pre-petition attorney's fees, costs and expenses is determined by the agreement between the parties and applicable non-bankruptcy law. 11 U.S.C. § 502(b)(1). Consequently, claims that are enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed.[20] As a result, if the parties had valid agreement that provided for pre-petition attorney's fees, costs and expenses and such agreement is valid under state law the claim must be allowed since pre-petition attorney's fees, costs and expenses are part of a secured creditor's claim in the first instance.[21] PRLP included evidence of the mortgage deeds and notes that expressly provide for payment of attorney's fees, costs and expenses in the event of a foreclosure and judicial action. This evidence was included as part of

---

[20] Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co., 549 U.S. 443, 452 (2007).

[21] In re South Side House, LLC, 451 B.R. 248, 263-264 (Bankr. E.D.N.Y, 2011) (citing In re Vanderveer Estates Holdings, Inc., 283 B.R. 122, 131 (Bankr. E.D.N.Y, 2002)).

the supporting documentation included in its proofs of claim. The various agreements and mortgage notes that secure PRLP's loan provide for payment of attorney's fees, costs and expenses equal to 10% of the mortgage amount principal. Debtors have not controverted this fact. As a result, PRLP's request for payment of pre-petition attorney's fees, costs and expenses in the amended claims is not based on a new right to payment, but on the same right established under its timely filed original proofs of claim. Debtors cannot allege they were caught off guard by the amendments since they knew that they knowingly and willingly entered into the agreements that provided for such payments. Consequently, Debtors were fairly alerted as to the liability to PRLP for pre-petition attorney's fees, costs and expenses and PRLP's amendments are based on the same rights asserted under its proofs of claim.

Once a right to payment has been established as part of the original claim, PRLP must demonstrate that the pre-petition attorney's fees, costs and expenses requested are allowed by state law. Articles 1106 through 1109 of the Puerto Rico Civil Code specifically govern penal clauses such as the payments of attorney's fees, costs and expenses in case of default and foreclosure actions.[22] Such clauses are not only allowed as a punitive tool that compels a debtor to perform, but are fairly standard in mortgage deeds in our jurisdiction. Local law governing penal clauses such as attorney's fees, costs and expenses do not require that they be reasonable; nevertheless there are equitable considerations under local law that might allow the modification of the penalties in limited situations.[23] To this effect, the Supreme Court for the Commonwealth of Puerto Rico has established that "this equitable remedy against excessive burden of a penal clause should only be used with great caution and notorious justification in extraordinary circumstances as a means of mitigating its excessive onerousness for the obligee, or the alarming lack of proportion."[24] No such extraordinary circumstances exist in our cases. Therefore, Debtors were contractually obligated to pay for attorney's fees, costs and expenses in case of a collection and foreclosure action. PRLP through its witness showed that the fees charged by its attorneys per hour are comparable to the rates charged in our jurisdiction. Furthermore, PRLP demonstrated that the amount of work performed in the state court litigation was extensive and that the fees included as part of PRLP's claims ($66,672) are less than one fourth of the amounts

---

[22] 31 L.P.R.A. §§ 3131-3134.

[23] Article 1108 of the Puerto Rico Civil Code states that "The court or judge shall equitably modify the penalty if the principal obligation should have been partly or irregularly fulfilled by the debtor." 11 L.P.R.A. 3133.

[24] Jack's Beach Resort, Inc. v. Puerto Rico Tourism Dev. Co., 112 D.P.R. 344 (1982).

it was entitled to contractually ($263,513). Considering the highly litigious history of the local court case, the considerable reduction of the attorney's fees, costs and expenses and the remaining balance of the loan as of the petition date, the Court finds no equitable reason to deny PRLP's request for $66,672 for pre-petition attorney's fees, costs and expenses in these cases.

Although PRLP was unable to explain why it failed to include such fees as part of its original proofs of claim, the amendment to include such fees is not a new claim. PRLP was able to demonstrate that the pre-petition attorney's fees, costs and expenses stem from the loan agreement and the mortgage deeds that guarantee the loan which were made part of Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case. Debtors knowingly agreed to the payment of attorney's fees, costs and expenses in the event of a foreclosure and judicial action. Debtors should not be surprised that PRLP is requesting what it is legally and contractually entitled to ask for as part of its claim. Debtors should not have been caught off guard because PRLP wants to enforce the conditions of agreements that were based on arm's length negotiations. On the other hand, Debtors were not able to rebut the reasonableness of the amounts requested as pre-petition attorney's fees, costs and expenses.

The Court gave careful consideration to the fact that the second amendments to PRLP's proofs of claim were done ten months after the claims bar date had elapsed for non-government entities and nine days before the confirmation hearing. Nevertheless, since there is no deadline in the Code or Rules after which amendment of claim is prohibited, this delay by itself does not constitute bad faith. Since the Debtors will need to amend its plan in accordance with the opinion and order entered on June 16, 2015, in both cases[25] the allowance of the attorney's fees, costs and expenses will not represent any dilatory tactic or unfair prejudice to the Debtors or to other unsecured creditors who will have a chance to evaluate any amended plan of reorganization and would otherwise receive an undeserved windfall from the denial of the amendments.

In summary, PRLP's amendments are based on the same rights of the timely filed proofs of claim. No unsecured creditors will be unfairly prejudiced by the allowance of the amendments to PRLP's proofs of claim. Debtors did not prove bad faith by PRLP. Therefore, Debtors' request to disallow the amendment to add $66,672 in pre-petition attorney's fees, costs and expenses is denied.

---

[25] Docket No. 396 in the corporate case and Docket No. 412 in the individuals' case.

With regards to the current amount of the claims and their classification, PRLP concedes that the principal of its claims should be reduced by adequate protection payments. To that effect, PRLP has provided an updated loan balance as of February 18, 2015, that reflects the reduction of the principal of the loan by the adequate protection payments made by Debtors ($355,721.28). PRLP has also conceded that all subsequent payments made by Debtors will continue to reduce the principal balance until the confirmation of Debtors' Joint Plan.[26] Nevertheless, PRLP does not need to adjust the amounts of its proofs of claim every time it receives a new monthly adequate protection payment since its proofs of claim are determined by the "state of affairs" prevalent at the date of Debtors' bankruptcy filing. Section 502 directs bankruptcy courts to determine the amount of a claim as of the date of the filing of the petition.[27] PRLP's proofs of claims as amended reflect the secured and unsecured balance owed by Debtors as of the time of the bankruptcy filing based on pre-petition amounts. As a result, Debtors' objection to PRLP's claim on this basis is also denied.

For the reasons stated herein, the Court denies Debtors' objection to PRLP's Proof of Claim No. 1 in the corporate case and Proof of Claim No. 9 in the individuals' case and the claims are allowed as amended.

SO ORDERED.

In San Juan, Puerto Rico, this 19th day of June, 2015.

_____

MILDRED CABAN FLORES
U.S. Bankruptcy Judge

---

[26] Although PRLP has admitted that adequate protection payments are being applied to the principal of the loan, it alleges that it would be entitled to post-petition interest payments if the adequate protection payments have rendered its undersecured claim into an oversecured claim.

[27] 11 U.S.C. § 502; New Power, 313 B.R. at 508.

-12-